# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-1317V
UNPUBLISHED

| | |
|---|---|
| LISA HRICA,<br><br>           Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>           Respondent. | Chief Special Master Corcoran<br><br>Filed: January 10, 2025 |

*Leah V. Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Sarah B. Rifkin, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[1]

On October 5, 2020, Lisa Hrica filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered a Table Injury – a Shoulder Injury Related to Vaccine Administration ("SIRVA") – as a result of an influenza ("flu") vaccine received on October 5, 2017. Petition, ECF No. 1 at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"). Although Respondent conceded entitlement, the parties could not agree on damages, so the disputed issues were submitted to AN SPU "Motions Day" hearing. An expedited hearing took place on

---

[1] Because this Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

December 19, 2024. Minute Entry dated December 30, 2024.[3] I orally ruled on Petitioner's damages at that time, and this Decision memorializes my determination.

For the reasons described below, I find that Petitioner is entitled to **$198,000.00** for actual pain and suffering, and **$610.00** for unreimbursable expenses, for a total award of **$198,610.00**.

## I.   Pain and Suffering

### A.  Legal Standard and Prior SIRVA Pain and Suffering Awards

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections II and III of *Winkle v. Sec'y Health & Hum. Servs.*, No. 20-0485V, 2022 WL 221643, at *2-4 (Fed. Cl. Spec. Mstr. Jan. 11, 2022)*.*

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[4]

### B.  Appropriate Compensation for Petitioner's Pain and Suffering

In this case, Ms. Hrica's awareness of the injury is not disputed, leaving only the severity and duration of that injury to be considered. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, affidavits, filings, and all assertions made by the parties in written documents and at the expedited hearing held on November 22, 2024. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and relied upon my experience

---

[3] Mr. Matteo Forero appeared on behalf of Petitioner, and Ms. Shelly Jock appeared on behalf of Respondent. The transcript of the hearing in this case was not filed as of the date of this Decision, but my oral ruling is incorporated by reference herein.

[4] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

The record establishes that Petitioner suffered a fairly severe SIRVA injury. Petitioner first sought treatment for her shoulder approximately two weeks after the initial vaccination, ON October 19, 2017, when she visited her primary care physician, Dr. Stephen Shields. She complained experiencing pain and decreased range of motion ("ROM") since receiving the flu vaccination and reported pain levels up to 10/10 at maximum. Ex. 2 at 26-27. Dr. Shields prescribed a conservative course of treatment with heat compress, Medrol, tramadol to manage the pain, and to wear a left shoulder sling. He also ordered an MRI for Petitioner, which she underwent the next day. The MRI shoed rotator cuff tendinopathy, diffuse rotator cuff muscle edema, moderate left shoulder joint effusion with a possible cyst, and a moderate amount of fluid in the subacromial subdeltoid bursa. Ex. 3 at 98.

Following the MRI, on November 14, 2017, Petitioner sought treatment from an orthopedist, Dr. Anthony Marcotte, who documented reduced ROM, tenderness, and positive impingement signs in Petitioner's shoulder. Ex. 3 at 86-88. Petitioner was prescribed an oral steroid Medrol Dosepak and additional treatment options, including surgery were discussed. Petitioner followed up with Dr. Marcotte two days later reporting the oral steroids had not improved her symptoms. Dr. Marcotte treated Petitioner with a cortisone steroid injection to her left shoulder. *Id.*

This began a pattern of treatment which lasted for several months where Petitioner's pain and ROM issues would be reduced for a few weeks or months but eventually the effects of the injection would wear off and she would return to Dr. Marcotte to follow-up and receive another injection. The record reflects Petitioner received cortisone injections on November 17, 2017, February 19, 2018, July 31, 2018, August 16, 2018, December 18, 2018, February 12, 2019, April 22, 2019, and July 1, 2019. *See generally* Ex. 3.

On August 21, 2019, Dr. Marcotte performed a left shoulder arthroscopy with synovectomy and debridement. His post-operative diagnosis was chronic left shoulder pain, bursitis, impingement, biceps tendinopathy, and neck pain. Ex. 3 at 11. Petitioner followed up with Dr. Marcotte for a post-operation visit on August 29, 2019, where she reported lingering pain, swelling, and tenderness, but reported normal ROM. She began PT on September 24, 2019 and completed 17 sessions through December 12, 2019. On November 18, 2019, Petitioner indicated to Dr. Marcotte that the PT had been beneficial so far but was still experiencing pain in her left shoulder and received a ninth steroid injection. Ex. 3 at 31. However, at the end of PT she expressed disappointment that her shoulder was not asymptomatic after her surgery. *Id.* at 17.

Petitioner reported for a second PT evaluation on March 11, 2020, after a hiatus due to issues with her health insurance, reporting pain of 3/10 at rest and 5-6/10 with active ROM and indicated she could not carry objects over five pounds without increased pain in her left shoulder. *Id.* at 7. However, Petitioner ultimately did not undergo any further PT according to the record. Petitioner also began another pattern of receiving intermittent steroid injections from her orthopedist's office (the records indicate she was seen either by Dr. Marcotte or Physicians Assistant Franceskino), taking place on February 3, 2020, May 7, 2020, December 28, 2020, May 17, 2021, and August 26, 2021.

On December 7, 2021, Petitioner saw PA Franceskino complaining of constant left shoulder pain and indicated that she wished to proceed with another surgery. Ex. 6 at 23. On January 12, 2022, Dr. Marcotte performed an arthroscopy with synovectomy, debridement, subacromial decompression, and arthroscopic rotator cuff repair. *Id.* at 26-29. The post-operative diagnosis was chronic left shoulder pain, impingement, bursitis, synovitis, a biceps tendon tear, and a near full-thickness rotator cuff tear. *Id.*

Following this second surgery, Petitioner did not seek any additional care until August 2, 2022, when she returned to PA Franceskino complaining of shoulder pain. She received a fifteenth steroid injection, a prescription for gabapentin, and a home exercise plan. Ex. 7 at 1-3. Petitioner's final documented medical treatment was over one year later on August 17, 2023, when she saw PA Franceskino complaining that her shoulder pain had slowly been flaring up and bothering her for the past six months. Ex. 8 at 1-3. She exhibited tenderness and positive impingement signs but her ROM tested normal; she was administered a sixteenth cortisone injection. *Id.*

Based upon all of the above, Petitioner has demonstrated grounds for a substantial award for pain and suffering - higher than what has been recommended by Respondent. Treatment of Petitioner's injury required two shoulder surgeries, 17 PT sessions, one MRI, and sixteen steroid injections. Nevertheless, the maximum allowable amount of pain and suffering the Act permits, and which she requests - $250,000.00 – is excessive based on comparable cases.[5]

Petitioner has cited to a plethora of cases which all provide good comparable points to the instant case. She specifically has focused her analysis on *Schoonover v. Sec'y of Health & Hum. Servs.*, No. 16-1324V, 2020 WL 5351341 (Fed. Cl. Spec. Mstr.

---

[5] Prior pain and suffering determinations are not binding on this decision. *See Nance v. Sec'y of Health & Human Servs.*, No. 06–730V, 2010 WL 3291896 at *8 (Fed. Cl. Spec. Mstr. July 30, 2010); *Hanlon v. Sec'y of Health & Human Servs.*, 40 Fed. Cl. 625, 630 (1998) ("Special masters are neither bound by their own decisions nor by cases from the Court of Federal Claims, except, of course, in the same case on remand."). These cases, however, provide persuasive guidance herein.

Augt. 5, 2020) (awarding $200,000.00 in actual pain and suffering and $39,600.00 for future pain and suffering); and *Lawson v. Sec'y of Heath & Hum. Servs.*, No. 18-882V, 2021 WL 688560 (Fed. Cl. Spec. Mstr. Jan 5, 2021) (awarding $205,000.00 in past pain and suffering to a Petitioner who underwent three surgeries). Petitioner also, briefly, cites to four additional cases: *McAuliffe v. Sec'y of Health & Human Servs.*, No. 18-1507V, (Fed. Cl. Spec. Mstr. Jul. 28, 2020) (two surgery case which was settled for $200,000.00); *Welch v. Sec'y of Health & Human Servs.*, No. 18-74V, 2021 WL 1795205 (Fed. Cl. Spec. Mstr. Apr. 5, 2021) (awarding $210,000.00 in a case with three surgeries); *McDorman v. Sec'y of Health & Hum. Servs.*, No. 19-814V, 2021 WL 5504698 (Fed. Cl. Spec. Mstr. Oct. 18, 2021) (awarding $200,000.00 in a case with two surgeries); and *Elmakky v. Sec'y of Health & Human Servs.*, No. 17-2032V, 2021 WL 6285619 (Fed. Cl. Spec. Mstr. Dec. 3, 2021) (awarding $205,000.00).

These cases provide helpful comparable awards for the instant case, but do not support an award of pain and suffering at the top of the "cap." There is no doubt that Petitioner suffered a moderate to severe SIRVA. She initially reported severe pain levels of up to 10/10. Even following her first surgery and attending 17 PT sessions, Petitioner reported pain levels of 3/10 at rest and up to 6/10 with activity. However, despite the overall length, Petitioner's course of treatment and the gaps therein suggest an injury with waxing and waning symptoms that was able generally be managed by the many steroid injections she received.

Petitioner places great weight on the fact that she has received 16 steroid injections to manage her shoulder pain – a number far greater than what is seen in most SIRVAs. But I cannot conclude on this record that the need for so many steroid injections was solely attributable to the degree of her pain. Rather, it is likely that her specific treating physicians were willing to provide these shots, rather than adopt a more conservative approach. And other aspects of her treatment were less extreme. For example, Petitioner underwent only 17 PT sessions, on the lower end of the cases she cited; the petitioner in *Schoonover* underwent twice the number of PT sessions, while the petitioner in *Welch* underwent "dozens" of PT sessions. Two of Petitioner's cited cases, *Lawson* and *Welch*, also involve petitioners who underwent *three* shoulder surgeries. I deem these treatment elements as relevant to the award I should issue as the number of steroid shots received.

Based on the cited cases and the record as it stands, Petitioner is entitled to an award of $198,000.00 for past pain and suffering. Petitioner's overall pain and suffering was roughly comparable to what petitioners in the aforementioned cases experienced – but not necessarily worse. I find *McDorman* to be the closest analog to the instant case. That petitioner underwent ten steroid injections but also over 50 PT sessions along with two surgeries. 2021 WL 5504698 at *3.

Respondent has failed to offer *any* comparable cases to support his proposed figure of $165,000.00. At the oral argument, Respondent argued that this figure was based on Respondent's view that the instant case was best understood to be a one-surgery case. When Petitioner first had an MRI of her left shoulder, it did not reveal any rotator cuff tearing; but following her second surgery, the post-operative diagnoses included a full-thickness rotator cuff tear. Respondent attributed this to a fall Petitioner had at work in which she also injured and received treatment for her left wrist.

However, there is nothing in the record which would indicate that Petitioner's work incident caused any aggravation to her ongoing left shoulder issues. Indeed, Respondent notes that when Petitioner saw PA Franceskino for left wrist pain in June and July 2021, she did not report left shoulder pain during either visit. Response at 10. This suggests that Petitioner's rotator cuff tear is likely more related to the ongoing wear and tear incurred by using her compromised shoulder rather than a specific trauma event.

In reaching my decision at the hearing, I noted that I considered this to be a two-surgery case and would award an amount of pain and suffering reflecting that. While Respondent is correct that subacute harms like rotator cuff tears are not attributable directly to a SIRVA, they are often unmasked in the process of treating the SIRVA, and in this case I do not ascertain sufficient evidence to distinguish treatment of these concerns from the SIRVA itself.

## Conclusion

Based on the record as a whole and arguments of the parties**, Petitioner is awarded a lump sum of $198,610.00 (representing $198.000.00 in past pain and suffering and $610.00 in past unreimbursable expenses), to be paid through an ACH deposit to petitioner's counsel's IOLTA account for prompt disbursement.**  This amount represents compensation for all damages that would be available under 42 U.S.C. § 300aa-15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[6]

**IT IS SO ORDERED.**

                                                **s/Brian H. Corcoran**
                                                Brian H. Corcoran
                                                Chief Special Master

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.